# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

ISAIAH PAILLETT,

Defendant.

2:19-cr-00003

## MEMORANDUM OPINION

**Mark R. Hornak, Chief United States District Judge**

The Defendant, Isaiah Paillett ("Defendant"), was indicted on January 2, 2019 on one (1) count of assaulting and inflicting bodily injury upon a security guard, designated under 18 U.S.C. § 1114, in violation of 18 U.S.C. §§ 111(a)(1), (b).[1] (ECF No. 3.) The alleged incident took place on December 14, 2018 at the Social Security Administration (SSA) Office in Downtown Pittsburgh, Pennsylvania. On April 17, 2019, a grand jury returned a superseding, two-count indictment, which included a second count of assaulting a security guard, also a designee under 18 U.S.C. § 1114, which allegedly occurred during the same incident on December 14, 2019 and in violation of 18 U.S.C. § 111(a)(1). (ECF No. 35.) The Defendant thereafter filed a Motion to Dismiss the Indictments, as well as a Motion for an Evidentiary Hearing. (ECF Nos. 69, 72.) The Government filed a Response and an evidentiary hearing was held on September 23, 2019. (ECF No. 73.) After the hearing, the Defendant filed a Brief in support of his argument and the Government filed a Response in Opposition, at which point this matter became ripe for disposition. (ECF Nos. 89, 92.) The only issue before the Court is whether the grand juries were presented with

---

[1] 18 U.S.C. § 111(b) is an enhanced penalty for assault *and* infliction of bodily injury upon a designated person.

1

perjured testimony that actually prejudiced the Defendant. If so, the Defendant argues that the Court must dismiss the initial Indictment and the Superseding Indictment. For the following reasons, the Court denies the Defendant's Motion.

On December 14, 2019, the Defendant entered the SSA Office with his benefits payee. At some point after arriving, the Defendant engaged in a disruptive, verbal altercation with an SSA claims specialist. There is no evidence that the Defendant was asked to leave or told that he no longer had permission to be in the building. However, due to his demeanor, the Government avers that the claims specialist told the Defendant that she would not speak with him, as she was only required to speak with his payee. (Def.'s Mot. for an Evid. Hr'g, Ex. A, ECF No. 72-2.) The specialist also recalled that, after the Defendant left, the security guards were told by management not to let him back inside. (*Id.*) What occurs after this point is caught on video by at least three security cameras in the SSA Office.[2] The videos are not accompanied by any audio recording. The Defendant is seen walking through the lobby and exiting the front entrance of the building. Walking just behind the Defendant as he exits through the lobby is a security guard, Cynthia Nacin, who appears to be walking from the same place off-camera as does the Defendant. Approximately one minute and fifteen seconds later, the Defendant attempts to reenter the building, walking through the outer doors and then through the inner doors, where the security checkpoint is located. The Defendant is met at the door by uniformed security guard Dwayne Allen ("Allen"), who the Government avers tells the Defendant that he is not permitted inside the building. Allen places his hands on the Defendant's abdomen to prevent him from proceeding further than the doors. Allen does not appear to push or strike the Defendant, but Allen does initiate contact. It is at this point

---

[2] Three videos from three different cameras were shown during the September 23 evidentiary hearing. Only two of these videos were played for the grand juries. However, in the Court's estimation, the videos shown to the grand juries show the incident most clearly. They provide close-up views of the Defendant's interaction with the guards at the security checkpoint, as well as the ensuing physical interaction that took place in the foyer and street outside.

2

that the interaction escalates. The Defendant becomes visibly upset and words are briefly exchanged before the Defendant shoves Allen forcefully with both hands, throwing him back a few feet. A second security guard, Derek Mink ("Mink"), also in uniform, intervenes and begins pushing the Defendant out the door. Allen reengages and also begins pushing the Defendant towards the outer doors. Mink, Allen, and the Defendant scuffle as the two security guards attempt to eject the Defendant. In the ensuing physical interaction, the Defendant is seen throwing several punches, at least one of which allegedly connects with Mink, causing a facial laceration that required stiches.

The Court heard testimony in the September 23 evidentiary hearing from Pittsburgh Bureau of Police Officer Vincent Gelpi ("Officer Gelpi") and Department of Homeland Security (DHS) Federal Protective Services Special Agent Chad Miller ("SA Miller"). The Court found both witnesses' testimony to be credible and drew the following conclusions based on that testimony. After the physical interaction with Mink and Allen, the Defendant got into his vehicle and drove off. Officer Gelpi was one of the responding officers after the incident occurred. Officer Gelpi spoke to Mink and observed the one-inch laceration on his face. Officer Gelpi gathered from speaking to Mink that the Defendant was asked to leave prior to his attempt to reenter the building. However, this fact was not of any concern to Officer Gelpi at the time because he considered the alleged assault more pressing than any potential trespass. Officer Gelpi testified that DHS apprehended the Defendant shortly after the incident and that the Defendant was questioned solely about the alleged assault, and not any trespass. On cross-examination, Officer Gelpi stated that Mink did not explicitly say that the Defendant himself was asked to leave, but rather that this was how he interpreted Mink's statements.

3

SA Miller testified that he learned of the incident at the SSA Office over his DHS police radio while in his office. He stated that he heard urgency in the voice of the officer who called it in, so he left his office to respond to the SSA Office. There, SA Miller spoke with Mink, who also told SA Miller that the Defendant was asked to leave prior to the alleged assault. SA Miller testified before both grand juries in this case. In both, SA Miller testified that the Defendant was asked to leave prior to returning. SA Miller also testified to this during the Defendant's Detention Hearing on March 28, 2019. (ECF No. 69, ¶ 15.) However, in the course of its investigation, the Government was unable to find a witness able to testify that the Defendant was in fact asked to leave. The defense was promptly alerted to this fact pursuant to the Governments obligations under *Brady*. (Def.'s Mot. to Dismiss Indictment, ECF No. 69, ¶ 17.) At the September 23 evidentiary hearing, SA Miller testified that he believed that the Defendant was asked to leave prior to the alleged assault when he presented that information to the grand juries. SA Miller stated that he did not intentionally lie to the grand juries and that he did not know what he testified to was incorrect until no witnesses came forward to corroborate it during trial preparation. The propriety of SA Miller's testimony is central to the question before the Court.

The importance of grand juries in our system of criminal justice is paramount. The right to not answer for an infamous crime except upon presentment or indictment by a grand jury is enshrined in the Fifth Amendment to the United States Constitution. U.S. CONST. amend. V, cl. 1. Given the *ex parte* nature of grand jury proceedings, prosecutors are held to a heightened standard of conduct as the handing up of an indictment can have "devastating personal and professional impact that a later dismissal or acquittal can never undo." *United States v. Williams*, 504 U.S. 36, 63 (1992) (quoting *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979)). Accordingly, a district court possesses the authority to dismiss an indictment based on prosecutorial misconduct

in a grand jury proceeding. *United States v. Soberon*, 929 F.2d 935, 939 (3d Cir. 1991). Nonetheless, dismissal of an indictment is considered "the most drastic remedy" and a defendant must be able to demonstrate that any such misconduct before a grand jury caused actual prejudice to the defendant to permit a court to dismiss the indictment.[3] *Id.* (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)); *United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011). Therefore, in the case of alleged perjured testimony before the grand jury, our Court of Appeals has held that district courts are bound by the doctrine of "harmless error." *Soberon*, 929 F.2d at 939. A finding of actual prejudice to the Defendant requires this Court to establish that "the violation *substantially* influenced the grand jury's decision to indict, or . . . there is grave doubt that the decision to indict was free from the *substantial* influence of such violations." *Id.* at 939–40 (emphasis added). Thus, the Court must find two things before it may dismiss the indictments. First, was there prosecutorial misconduct committed before the grand juries? That is, did SA Miller perjure himself when he testified before the two grand juries or was that false testimony offered by the Government knowing it was false? Second, if there was misconduct, did it cause actual prejudice or was it harmless error?[4]

Whether SA Miller committed perjury is a factual finding for the Court to determine. *Id.* at 940. "Perjury is defined as knowingly making a false, material declaration under oath." *Id.* (citing 18 U.S.C. § 1623). The Defendant cites *United States v. Hoffecker*, 530 F.3d 137, 181 (3d. Cir 2008), for the proposition that "knowingly" requires a conscious and voluntary act, with an

---

[3] *United States v. Wright*, in which a petition for certiorari has been filed, frames the rule as: "a court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." 913 F.3d 364, 371 (3d Cir. 2019).

[4] The Defendant cites Ninth Circuit law to articulate a rule that a defendant's rights are violated when he must stand trial, but (1) the Government knows the indictment was partially based on perjury, (2) the perjured testimony is material, and (3) jeopardy has not attached. *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). Because our Court of Appeals has not adopted the *Basurto* rule, the Court does not apply it here. However, the Court does not believe the *Basurto* rule would change the outcome here, given the lack of perjury and of materiality in this case.

5

awareness and realization of what was happening, and not mere mistake, accident, or other innocent reason. This definition is consistent with Third Circuit case law. *See United States v. Maury*, 695 F.3d 227, 262 (3d Cir. 2012) ("these proffered instructions are consistent with our own case law and our recommended jury instructions concerning 'knowing' conduct"). Accordingly, the Court agrees that the Defendant's definition of perjury applies here, but consequently finds that he failed to demonstrate SA Miller perjured himself.

The Defendant avers that SA Miller "*knowingly* made factual representations to the grand jury that undoubtedly influenced their decision to indict Defendant." (ECF No. 89, at 6. (emphasis added).) However, to prove this assertion the Defendant offers nothing more than conclusory argument, accompanied by no evidence. In support of his claim, the Defendant simply reiterates the fact that SA Miller erroneously testified that the Defendant was asked to leave the SSA Office, which turned out to be untrue upon further investigation. While the Defendant makes a lengthier argument as to the materiality of these false statements, the issue of whether the statements were made *consciously, voluntarily,* and with *an awareness and realization of what was happening* is unsupported in the Defendant's briefs and was not demonstrated, in the Court's estimation, by testimony elicited during the September 23 evidentiary hearing. SA Miller testified, and the Court found that testimony to be credible, that Mink had told him that the Defendant was asked to leave prior to the alleged assault. SA Miller also testified that he had no idea that the statement was untrue until no witnesses came forward to testify that the Defendant was asked to leave. Officer Gelpi's testimony lends additional credibility to SA Miller. Officer Gelpi testified that, at the time of his investigation, Mink also relayed to him that the Defendant was asked to leave. This statement, which Officer Gelpi testified was not his main concern at the time, was nonetheless recorded in his police report, further corroborating SA Miller's testimony. (ECF No. 92-1, at 3.)

What the record demonstrates to the Court is that SA Miller conferred to the grand juries a misstatement or mistake, the genesis of which appears to be Mink, and which, alone, is "not sufficient to warrant a finding of misconduct or to justify dismissal of an indictment."[5] *United States v. Smith*, 282 F. App'x 143, 149 (3d Cir. 2008) (quoting *United States v. Fisher*, 871 F.2d 444, 450 (3d Cir. 1989)). For these reasons, the Court finds that SA Miller did not perjure himself without having to reach a conclusion on the materiality prong of the perjury inquiry.[6] Thus, because the Government did not learn that the statements were false until well after the indictments were returned (at which point it promptly alerted the Defendant pursuant to its *Brady* obligations), there is no basis to find prosecutorial misconduct. *See Bank of Nova Scotia*, 487 U.S. at 261 (suggesting prosecutors must have knowledge of falsity). The Defendant also cites some authority holding that the Government cannot proceed to trial when it knows the underlying indictment was based at least partially on perjured testimony, even if it did not know at the time the testimony was given. *See United States v. Liciardello*, 93 F. Supp. 3d 365 (E.D. Pa. 2015). In finding that no perjury occurred, the Court concludes there is also no reason the Government cannot proceed to trial on the Superseding Indictment.[7]

---

[5] Some evidence was presented at the September 23 evidentiary hearing suggesting that the Defendant may in fact have been told to leave, namely that a security guard is seen walking from the same location as the Defendant when they appear on camera, suggesting that perhaps the guard told him he had to leave. The Government also argues that it is equally possible that the Defendant was told to leave, but that the witnesses have forgotten. (ECF No. 92, at 5–6.) Lacking more evidence to demonstrate SA Miller's testimony was true, the Court presumes purely for the purposes of its Opinion that this particular testimony was false.

[6] The materiality prong of perjury in the grand jury context focuses on whether the statement "has a *tendency* to influence, impede, or hamper the grand jury from pursuing its investigation." *United States v. Reilly*, 33 F.3d 1396, 1419 (3d Cir. 1994) (emphasis added). Unlike the Court's "actual prejudice" inquiry, the Court finds that the false statements were material (but still unknowing and unintentional) as to Count II for assault on Dwayne Allen because Allen initiated physical contact and the Third Circuit has held that justification defenses could negate criminal intent under 18 U.S.C. § 111, and therefore might *tend* to influence a grand jury. *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971).

[7] The Defendant also cites the Second Circuit to argue that even negligent conduct on the part of the prosecutor can warrant dismissal of an indictment. *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir. 1969). However, the *Leibowitz* case concerned the over-use of hearsay evidence in grand jury proceedings and in what instances such over-use may arise to the level of permitting dismissal of an indictment. Thus, apart from being non-binding on this

7

Even if the Court were to find that knowingly false testimony had been presented, the Court concludes that it would not have caused actual prejudice to the Defendant. In order to conclude that the Defendant was prejudiced, the Court must find that "the violation substantially influenced the grand jury's decision to indict, or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Soberon*, 929 F.2d at 939–40. The Defendant's argument is essentially that (1) SA Miller's testimony painted the Defendant as the "aggressor" because he defiantly returned after being asked to leave and (2) if he was *not* asked to leave, then he returned to the SSA Office believing he had every right to be there, and this would permit the grand juries to view the physical interaction between the Defendant and security guards in a different light. (ECF No. 89, at 6.) The Court disagrees, and here's why.

The Defendant is facing two (2) charges of assault on a designated officer while engaged in the performance of their official duties in violation of 18 U.S.C. § 111(a)(1). With respect to Derek Mink, he faces an enhanced penalty under Count I for also inflicting bodily injury—the facial laceration—in violation of 18 U.S.C. § 111(b). This statute is not a specific intent crime. The Third Circuit has concluded that "scienter is not required either in the indictment or the proof to sustain a conviction under any portion of Section 111." *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971). The Government therefore does not need to show that the Defendant knew his alleged victims were persons designated under the statute, just that he intended to commit an assault. However, the "defendant is not precluded from showing that his use of force was defensible and justified." *Id.* The Defendant may still "cast a reasonable doubt upon the existence

---

Court, the Second Circuit opinion is only marginally applicable to this case. The Defendant cites a Northern District of Illinois case as well, which considered the "totality of circumstances" and concluded that the "negligent conduct of the United States" necessitated dismissal of the underlying indictment. *United States v. Asdrubal-Herrera*, 470 F. Supp. 939, 943 (N.D. Ill. 1979). It further held that it was immaterial whether the actions by prosecutors were negligent rather than deliberate. *Id.* "It is not the motive of the government which is controlling, it is the effect of its actions" on the grand jury proceedings. *Id.* However, this case is also non-binding on this Court and, even accepting the argument, the Defendant's Motion must still be denied because he has failed to show actual prejudice.

8

of *mens rea* by showing that, under the circumstances, he reasonably believed the facts to be other than they were and that his actions would have been innocent had his belief been correct." *Id.* For instance, a defendant may justifiably use reasonable force in self-defense if he reasonably believes that he is being subject to a hostile attack and reasonably does not know he is being arrested. *Id.*

The Defendant alludes to this self-defense argument in his Briefs. (ECF Nos. 69, ¶ 25; 89, at 6–7.) Even if the Court were to accept that the Defendant *reasonably* believed that he was lawfully able to reenter the building and that he *reasonably* believed that Allen was acting without lawful authority to obstruct the Defendant's reentry, those facts would be highly unlikely to *substantially* affect the grand juries' determination in light of the other evidence presented. That evidence includes testimony and footage of Defendant's violent, two-handed shove of Allen and the ensuing multiple punches thrown by the Defendant, one of which allegedly injured Mink. Whether or not the Defendant was explicitly told to leave, he was stopped at the door and denied entry by Allen, as instructed by management, due to the Defendant's abusive and disruptive behavior that occurred minutes before. The security footage does not show Allen pushing, striking, or otherwise using undue force to deny entry to the Defendant. Rather, it shows Allen placing his hands on the Defendant's abdomen to obstruct him. Therefore, any potential justification defense to 18 U.S.C. § 111 based on the Defendant's right of access and self-defense may turn out to be marginal at best. Therefore, even if the grand juries erroneously believed that the Defendant was told to leave the SSA Office, there was no actual prejudice to the Defendant because "there was sufficient evidence to [otherwise] support the indictment." *United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987) (noting that, in nearly all Third Circuit cases in which prosecutorial misconduct was found, the Court never dismissed any indictments after determining there was sufficient other evidence, which demonstrated the error was harmless). There is nothing to indicate, in light of all

9

of the other evidence they considered, that the grand juries were *substantially* influenced by the purportedly false testimony and the Court has no "grave doubt" that the indictment was free from *substantial* influence of any violation. *Soberon*, 929 F.2d at 939. After all, the videos do show the Defendant forcefully shoving Allen way back on his heels, and the results of his punching away on Mink's face. Since defiance of an order to not reenter is not an element of the offenses charged, and the Defendant has the burden to demonstrate justifications for his actions, the Court concludes that the unintentionally false testimony given by SA Miller did not actually prejudice the Defendant in the grand jury proceedings.[8] Viewing the videos they did, whether or not the Defendant had been asked to leave and not return, it would be a real stretch to conclude that had the grand juries known there was no "leave and don't return" directive, the indictments would not have been returned. After all, those videos provided plenty of probable cause in their own right for the grand juries to indict the Defendant on these charges.

For the foregoing reasons, the Defendant's Motion to Dismiss the Indictment and Superseding Indictment, ECF No. 69, is DENIED.

An appropriate Order will follow.

Mark R. Hornak
Chief United States District Judge

Dated: November 20, 2019

cc:  All counsel of record

---

[8] In its first Brief in Opposition, ECF No. 73, at 5–7, the Government anticipates the argument that, because the Defendant was not actually asked to leave, the security guards were not acting within the scope of their official duties, as required by 18 U.S.C. § 111, when they denied him entry. However, the Defendant did not adopt that argument in his briefs or at the evidentiary hearing. Thus, the Court does not address it here.